UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARCOS GARCIA RAYOS,

        Plaintiff,

v.

SHANE JACKSON et al.,

        Defendants.
_____/

Case No. 1:18-cv-1240

Honorable Robert J. Jonker

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Carson City Correctional Facility, Jackson, Floyd, Fenby, Gonsalez, Kline, Niemic, Kavanaugh, Blair, Russell, Figeroa, and Milanowski.

**Discussion**

   I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues MDOC Hearings Administrator Richard D. Russell, DRF, and the following DRF personnel: Warden Shane Jackson; Deputy Wardens Unknown Floyd and Unknown Fenby; Administrative Assistant Unknown Gonsalez; Litigation Coordinator Unknown Kline; Grievance Coordinator O. Figeroa; Resident Unit Manager (RUM) Unknown Niemic; Prisoner Counselors Unknown Hoffman and Unknown Blair; Sergeant Unknown Milanowski; Correctional Officers Unknown Trefil and Unknown Findley; and Hearing Investigator K. Kavanaugh.

Plaintiff was transferred to DRF from LRF on August 21, 2017. He received his property on August 22, 2017, including two footlockers, a Swintec typewriter, and two padlocks, all of which were in good working order.

Within a couple of months, Plaintiff became the DRF Housing Unit Block Representative for his unit. He raised issues about staff mistreatment of prisoners. Because of the complaints Plaintiff made as block representative, Defendants Findley, Trefil, and Hoffman allegedly began to harass him. On November 7, 2017, Plaintiff sent complaints about the harassment to Defendants Jackson, Floyd, Fenby, Neimic, Gonsalez, and Kline, and he sent a copy to Defendant Hoffman, so that he would be aware of the mistreatment. Defendant Kline acknowledged receipt of the complaint on November 9, 2017, but Kline allegedly took no further

action. Defendants Jackson, Floyd, Fenby, Gonsalez, and Niemic all failed to respond to the complaint and failed to take action against Defendants Findley, Trefil, and Hoffman.

On November 14, 2017, Plaintiff filed a grievance about the issue. Plaintiff complains that Defendant Figeroa did not issue a grievance identification number, preventing Plaintiff from exhausting his administrative remedies.

On December 4, 2017, Plaintiff raised his complaints with Defendant Blair. Defendant Blair photocopied an "Agenda" for the block representative meeting, which was to be submitted to Defendants Jackson, Floyd, Fenby, Gonsalez, Niemic, and Hoffman. (Compl., ECF No. 1, PageID.7; Ex. 5 to Compl., ECF No. 1-1, PageID.20.) On December 6, 2017, Defendants Hoffman and Trefil summoned Plaintiff to the officer's podium, ostensibly because of Plaintiff's complaints. Prisoner Cadarette, Plaintiff's bunkmate and the other block representative, also was summoned. Both Plaintiff and Cadarette were directed to pack their things. They were then moved to a "red" cell, located under the unit steps, where prisoners are taken for observation.

On December 10, 2017, between 8:30 and 9:30 a.m., Defendant Findley woke Plaintiff and ordered him out of his cell. Defendant Findley spent 17 seconds searching the lockers. At 10:45 a.m., Plaintiff and Cadarette went to the medication lines. When they returned, Defendants Findley, Trefil, and Milanowski rushed at them, handcuffed them behind their backs. Defendant Milanowski also pointed a taser at them and ordered them to the control center for strip searches. Plaintiff alleges that Defendant Milanowski used excessive force and intimidation by holding Plaintiff with a taser pointed at him while he was being strip searched while handcuffed. Plaintiff and Cadarette were left in the control center lobby until 1:45 p.m., while Defendants Trefil

3

and Findley searched their cell. Plaintiff complained to Milanowski about the harassment he had suffered from Trefil and Findley.

Plaintiff alleges that, in retaliation for his complaints about them, Defendants Findley and Trefil conspired with Defendant Hoffman to plant a knife in his locker, to write a fraudulent misconduct, and to subsequently confiscate Plaintiff's typewriter and place Plaintiff in segregation. Plaintiff alleges that Findley purported to find a knife in a locked locker, but without specifying whose locker it was. During the same search, Defendant Trefil wrote a misconduct ticket against Plaintiff's bunkmate for possessing dangerous contraband. Defendant Hearing Investigator Kavanaugh allegedly refused to investigate Plaintiff's claim that the Class-I misconduct charges were written in retaliation for Plaintiff's protected speech. Plaintiff was convicted of possessing a weapon and sanctioned to 30 days of toplock.[1] Plaintiff contends that, by refusing to investigate the retaliatory motive, Defendant Kavanaugh violated Plaintiff's right to due process. Plaintiff appealed the misconduct finding. Defendant Russell denied the appeal.

During the same cell search that produced the weapon, Defendant Trefil confiscated Plaintiff's typewriter, falsely claiming that a wire from a headphone was hanging out the back,

---

[1] MDOC Policy Directive 03.03.105 ¶¶ MMM-NNN describes toplock as follows:

> A prisoner on toplock is restricted to his/her own cell, room, or bunk and bunk area. For purposes of this section, "bunk area" is defined as the prisoner's bunk and the floor area next to the prisoner's bunk which extends to the mid-point between the adjacent bunks on all sides. If a prisoner is housed in a multiple occupancy cell or room, toplock may consist of placement in a cell/room which is designated as a toplock cell/room. If placed in such a cell/room, the prisoner shall be given the same access to his/her property which would be provided if housed in his/her own cell/room and shall be treated in all other respects as being on toplock. . . . A prisoner on toplock shall not leave his/her cell, room, or bunk area for any reason without specific authorization from the appropriate staff person. The prisoner may be deprived of use of his/her television, radio, tape player, and portable media player while on toplock as provided in the facility operating procedure.

*Id.*

though Trefil did not provide photographic evidence. Defendant Hoffman conducted the hearing on the typewriter, but refused to allow Plaintiff to see it. Hoffman placed a 30-day hold on the typewriter. Defendant Hoffman allegedly did not allow Plaintiff's family to pay to have it fixed, because Hoffman knew that, due to institutional debts, any funds placed in Plaintiff's account by his family would be immediately confiscated, leaving only $11.00.

On December 10, 2017, two prisoners witnessed Defendants Trefil and Findley ripping and crumbling Plaintiff's court papers and laughing as they threw away Plaintiff's property. Plaintiff attaches the affidavits of the two prisoners. (Ex. 7 & 8 to Compl. ECF No. 1-1, PageID.22-23.) Plaintiff contends that Defendants Findley and Trefil threw out his foot locker, along with the contents, which included pending litigation against the Defendants' supervisor Kris Nevins, as well as Plaintiff's photographs of his deceased parents. Sometime after Plaintiff was released from segregation, Officer Cook (not a Defendant) told Plaintiff that he was aware of Plaintiff's civil action against his supervisor, Inspector Nevins, but he assured Plaintiff that he had taken no part in the actions of Findley and Trefil to throw away Plaintiff's property.

Plaintiff alleges that Defendant Russell violated prison policy and Plaintiff's due process rights and condoned illegal conduct when Russell denied his Step-III grievance (No. DRF-17-12-3362-19Z) about the taking and destruction of his property. Plaintiff complains that Defendant Russell also violated his rights by allowing time to expire on two grievances (No. DRF-17-12-3339-19Z and No. 17-12-3421-19Z) without a decision on the grievance appeal.

Plaintiff complains that Defendants Jackson, Floyd, Fenby, Kline, Gonsalez, Niemic, and Figeroa failed to correct the harassing actions of Defendants Trefil and Findley, which were condoned by Defendant Hoffman. Plaintiff alleges that by failing to take action, Defendants

5

caused him to be mentally stressed, to receive increased disciplinary points, to accumulate a higher security level, and to lose personal property costing $450.00.

Plaintiff claims that Defendants' actions violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments. He seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant DRF

Plaintiff sues the Carson City Correctional Facility, DRF, which is a prison within the MDOC. Plaintiff may not maintain a §1983 action against the Michigan Department of Corrections or its subdivisions. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th

Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections or one of its facilities) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

Dismissal for failure to state a claim is appropriate where the allegations, taken as true, establish that relief is barred by an affirmative defense such as failure to exhaust administrative remedies, statute of limitations, or absolute immunity. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Here, Plaintiff's allegations establish that the relief he requests is barred by sovereign immunity under the Eleventh Amendment. In addition, DRF is not a person within the meaning of § 1983. For both reasons, the claim against DRF must be dismissed for failure to state a claim.

### B. Defendants Kavanaugh & Russell

Plaintiff alleges that Defendant Kavanaugh violated prison policy and Plaintiff's right to due process by refusing to investigate certain evidence, which Plaintiff believed was relevant to proving that the misconduct charge for possessing a weapon was false and retaliatory. He contends that Defendant Kavanaugh's refusal to conduct further investigations resulted in Plaintiff being found guilty of a false and retaliatory misconduct. Plaintiff also alleges that Defendant Russell violated his right to due process by not granting a rehearing on the misconduct conviction.

To the extent that Plaintiff claims the conduct of Kavanaugh and Russell violated prison policy, he fails to state a cognizable claim under § 1983. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar*

8

*v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

Moreover, a prisoner's ability to raise a due process challenge to a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Plaintiff received only a limited sanction of 30 days of toplock. Short-term penalties of toplock and loss of privileges do not equate

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

to an atypical and significant hardship. *Sandin*, 515 U.S. at 486 (30 days of segregation is neither atypical or significant); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (loss of privileges for 14 days is not atypical or significant; *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. 2000) (two-day sentence of toplock is not atypical and significant); *Hankins v. Woodward*, No. 16-13845, 2017 WL 4276939, at *2 (E.D. Mich. Aug. 4, 2017) (penalty of five days of toplock and seven days of loss of privileges is simply a short-term, minor penalty that does not implicate due process).

Because Plaintiff had no liberty interest at stake, he was not entitled to due process in the misconduct proceedings. As a consequence, Defendant Kavanaugh's failure to investigate could not have implicated Plaintiff's due process rights. For the same reasons, Defendant Russell's denial of Plaintiff's request for rehearing did not implicate due process.

### C. Defendant Figeroa

Plaintiff alleges that Defendant Grievance Coordinator Figeroa did not process a grievance filed by Plaintiff on November 14, 2017. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28,

11

1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Figeroa's conduct did not deprive him of due process.

Moreover, Defendant Figeroa's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Figeroa.

### D. Defendants Jackson, Floyd, Fenby, Gonsalez, Kline, Niemic, Russell, Blair, and Hoffman

Plaintiff alleges that Defendants Jackson, Floyd, Fenby, Gonsalez, Kline, and Niemic failed to take action in response to Plaintiff's November 7, 2017, written complaint about the harassment allegedly suffered at the hands of Defendants Hoffman, Findley, and Trefil. He alleges that Defendants Jackson, Floyd, Fenby, Niemic, and Gonsalez also ignored a complaint about the same matters that Plaintiff raised on December 4, 2017. Plaintiff also suggests that Defendant Hoffman violated his rights by not taking action on the complaints sent to Defendants Jackson, Floyd, Fenby, Niemic, Gonsalez, and Kline on November 7 and December 4, 2017, because Hoffman was copied on those complaints but failed to take action against Defendants Findley and Trefil. In addition, he alleges that Defendant Russell denied his Step-III grievances about the allegedly fraudulent misconduct charge and the destruction of his property by Defendants Findley and Trefil. Finally, Plaintiff alleges that Defendant Blair made copies of his "Agenda" for submission to Defendants Jackson, Floyd, Fenby, Gonsalez, Niemic, and Hoffman, but took no further action on his complaint.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act

based upon information contained in a complaint or grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Under this authority, Plaintiff's allegations that Defendants Jackson, Floyd, Fenby, Gonsalez, Kline, Niemic, Hoffman, and Blair failed to take action on his complaints or grievances fails to state a claim, because it fails to demonstrate active conduct by these Defendants. For the same reasons, Plaintiff's allegations that Defendant Russell denied his Step-III grievance fails to state a claim. Because Plaintiff raises no additional allegations against Defendants Jackson, Floyd, Fenby, Gonsalez, Kline, Niemic, Blair, and Russell, he fails to state a claim against them.

### E. Defendant Milanowski

Plaintiff alleges that, on December 10, 2017, after Defendant Findley had entered his cell and allegedly found a weapon, Defendants Findley, Trefil, and Milanowski

> bum rushed us and cuffed us behind our backs and ordered us at Tazer gun point to the control center, forced strip search pointing his tazer at me. Sgt. Milanowski used excessive force and intimidation by holding me at Gun point while cuffed to during strip search.

(Compl., ECF No. 1, PageID.8 (verbatim).) Plaintiff alleges that Defendant Milanowski violated the Eighth Amendment by pointing the taser at Plaintiff while Plaintiff was handcuffed and being searched.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and

wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim about being placed in restraints with a taser pointed at him must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37-39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Plaintiff's claim concerning the handcuffs fails because it is clear from his allegations that there was a penological justification for the use of handcuffs, and, thus, the restraints were constitutionally permissible. Physical restraints are constitutionally permissible

15

where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at *1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995). Where, as here, officers found a weapon in Plaintiff's cell, it was entirely reasonable for them to place Plaintiff in handcuffs while they transported him and searched him for a weapon. Plaintiff makes no allegation that the handcuffs were applied unnecessarily roughly or that he suffered an injury from them. Under these circumstances, Plaintiff cannot show that there was a constitutional violation by his placement in handcuffs during the movement of Plaintiff and the conduct of the strip search.

Moreover, Defendant Milanowski's pointing of the taser did not violate the Eighth Amendment. The Sixth Circuit has "never found that pointing a taser, as opposed to actually discharging one, constitutes the use of excessive force." *Evans v. Plummer*, 687 F. App'x 434, 442 (6th Cir. 2017) (rejecting the claim in the context of the less-demanding Fourth Amendment claim concerning excessive force during arrest); *Guilford v. Frost*, 269 F. Supp. 3d 816, 829 (W.D. Mich. 2017) (another Fourth Amendment case); *see also Salvodon v. Ricotta*, 2013 WL 3816728 (E.D.N.Y. July 22, 2013) (no claim stated based on threatened use of taser alone); *Noe v. West Virginia*, 2010 WL 3025561 (N.D.W.Va. July 29, 2010) (merely pointing a taser cannot support a claim for excessive force). While some courts have held that the threat to use a taser combined with the pointing of a taser can violate a prisoner's rights under the Eighth Amendment, such conduct can only amount to a violation if done with a solely malicious purpose, such as to instill gratuitous fear. *See Parker v. Asher*, 701 F. Supp. 192, 194 (D. Nev. 1988) (citing *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988) (holding that taser guns were not per se unconstitutional in the prison context if "used to enforce compliance with [an order] that had a reasonable security

purpose"); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (disallowing the pointing of tasers for a strictly malicious purpose of inflicting gratuitous fear)).

Defendant Milanowski did not deploy his taser, he merely pointed it to ensure Plaintiff's compliance with the cuffing, transport, and search. Given that a weapon had been found in Plaintiff's cell, any reasonable correctional officer would have a concern that Plaintiff might have had another weapon. Plaintiff utterly fails to allege facts suggesting that Defendant Milanowski acted with a malicious purpose, and the circumstances fully support a conclusion that the weapon was pointed for a legitimate security purpose. On the facts as alleged, nothing about the pointing of a taser suggests the wanton use of force necessary to show an Eighth Amendment violation.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Carson City Correctional Facility, Jackson, Floyd, Fenby, Gonsalez, Kline, Niemic, Kavanaugh, Blair, Russell, Figeroa, and Milanowski will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, Plaintiff's claim against Defendant Hoffman based on Hoffman's failure to take action in response to Plaintiff's complaints will be dismissed for failure to state a claim.

An order consistent with this opinion will be entered.


Dated: __December 27, 2018__        /s/ Robert J. Jonker
                                                          ROBERT J. JONKER
                                                          CHIEF UNITED STATES DISTRICT JUDGE